# EXHIBIT A



COPY

A TRADE NAME FOR SEAMASTER LOGISTICS INC FMC LICENSE # 021610N

**BILL OF LADING FOR COMBINED TRANSPORT OR PORT TO PORT SHIPMENT**

SHIPPER / EXPORTER
QINGDAO DESIREE INTELLIGENT EQUIPMENT CO.,LTD
ADD:NO.378,HAIBIN 5TH ROAD E&DZONE, JIAONAN CITY,QINGDAO,CHINA

Phone: Fax:

BILL OF LADING: STA02491818
FILE NO: 177PHYHYQ84002VP
SCAC: SMMB
EXPORT REFERENCES: 19580
POINT AND COUNTRY OF ORIGIN
BOOKING NO.: 177PHYHYQ84002VP

CONSIGNEE
TO THE ORDER OF SHIPPER

Phone: Fax:

FORWARDING AGENT - REFERENCES
TRANSCO SHIPPING CORP.
ONE CROSS ISLAND PLAZA, SUITE 120
ROSEDALE, NY 11422
ROSEDALE NY 11422
UNITED STATES
Phone:+1 718-528-5000 Fax:+1 866-252-2010

NOTIFY PARTY
PARK PLUS,INC
83 BROAD AVENUE, FAIRVIEW NJ 07022 USA

Phone: Fax:

ALSO NOTIFY / ROUTING / INSTRUCTIONS

| *PRECARRIAGE BY | PLACE OF RECEIPT BY PRECARRIER | ITEM NUMBER |
|---|---|---|
| | QINGDAO, CHINA | |
| VESSEL / VOYAGE | PORT OF LOADING | LOADING PIER / TERMINAL |
| SAFMARINE MERU / 618E | QINGDAO, CHINA | |
| PORT OF DISCHARGE | *PLACE OF DELIVERY BY ONCARRIER | TYPE OF MOVEMENT |
| MIAMI,FL, UNITED STATES | MIAMI,FL | CY/CY |

PARTICULARS FURNISHED BY SHIPPER (but not acknowledged by the Carrier (see clause 11)

| MARKS AND NUMBERS | NO. OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASURE |
|---|---|---|---|---|
| NO MARK | 4<br>7 | x 40GP CONTAINER<br>x 40HC CONTAINER<br>50 Package(s)<br>COVERING 70 PERCENT OF INVOICE VALUE OF GOODS AND/OR SERVICES DESCRIBED AS<br>PO19580<br>115x DP003 CAR STACKERS<br>FREE ON BOARD QINGDAO,CHINA<br>NO WOOD PACKING MATERIAL IS USED IN THE SHIPMENT | 160000.00 KG | 656.000 M3 |

| Container | Seals | Type | Weight(KG) | Volume(M3) | Packages | Mode |
|---|---|---|---|---|---|---|
| CARU9948941 | FEX8808953 | 40HC | 19000.00 | 64.000 | 3 PKG | CY/CY* |
| CAXU9010066 | FEX9086385 | 40HC | 19000.00 | 64.000 | 3 PKG | CY/CY* |
| CAXU9072129 | FEX8808952 | 40HC | 19000.00 | 64.000 | 3 PKG | CY/CY* |
| CRXU9711749 | FEX8808950 | 40HC | 10000.00 | 64.000 | 12 PKG | CY/CY* |
| FSCU4614433 | FEX9086420 | 40GP | 9000.00 | 52.000 | 5 PKG | CY/CY* |

SHIPPED ON BOARD 07-May-16
FREIGHT COLLECT

Original Bill Required at Destination

*Shipper Load Count and Sealed
Continuation Page Follows...

SAY TOTAL

EXCESS VALUATION: REFER TO CLAUSE 7(3) ON

Received by the Carrier from the Shipper in apparent good order and condition (unless otherwise noted herein) the total number or quantity of Containers or other packages or units indicated in the box above entitled "* Total No. of Containers/Packages received by the Carrier" for Carriage subject to all the terms and conditions hereof (INCLUDING THE TERMS AND CONDITIONS ON THE REVERSE HEREOF AND THE TERMS OF THE CARRIER'S APPLICABLE TARIFF) from the Place of Receipt of the Port of Loading, whichever is applicable, to the Port of Discharge or the Place of Delivery, whichever is applicable. If the Carrier so requires, before he arranges delivery of the Goods one original Bill of Lading, duly endorsed, must be surrendered by the Merchant to the Carrier at the Port of Discharge or at some other location acceptable to the Carrier. In accepting this Bill of Lading Merchant expressly accepts and agrees to all its terms and conditions whether printed, stamped or written, or otherwise incorporated, notwithstanding the non-signing of this Bill of Lading by the Merchant.
IN WITNESS whereof 0 (zero) original Bills of Lading (unless otherwise stated above) have been signed, one of which being accomplished, the others shall be void.

| FREIGHT AND CHARGES | PREPAID | COLLECT |
|---|---|---|
| As Agreed | | |

AS AGENT(S) ONLY

DATE MO. 05 DAY 07 YEAR 2016

B/L NO. STA02491818

*APPLICATION FOR COMBINED TRANSPORT ONLY

TOTAL CHARGES CONVERTED TO USD

| RESP. CODE | TOTAL CHARGES |
|---|---|
| | |

# CONTINUATION PAGE

# BILL OF LADING - STAO2491818

**Consignor**
QINGDAO DESIREE INTELLIGENT EQUIPMENT CO.,LTD
ADD:NO.378,HAIBIN 5TH ROAD E&DZONE, JIAONAN
CITY,QINGDAO,CHINA

**Consignee**
TO THE ORDER OF SHIPPER

**Notify Party**
PARK PLUS,INC
83 BROAD AVENUE, FAIRVIEW NJ 07022 USA

Phone:
Fax:

**Goods Collected From**
QINGDAO

**ETD** 07-May-16

**Goods Delivered To**
MIAMI,FL

**ETA** 10-Jun-16

**Gross Weight**
160000.00 KG

**Volume**
656.000 M3

**Package Quantity**
50 PKG (OUTER)

| Container | Seals | Type | Weight(KG) | Volume(M3) | Packages | Mode |
|---|---|---|---|---|---|---|
| GLDU4036194 | FEX8808947 | 40GP | 9000.00 | 52.000 | 5 PKG | CY/CY* |
| INBU5024494 | FEX9110137 | 40GP | 9000.00 | 52.000 | 5 PKG | CY/CY* |
| MSCU8560501 | FEX8808951 | 40HC | 19000.00 | 64.000 | 3 PKG | CY/CY* |
| TGHU8725161 | FEX8808949 | 40HC | 19000.00 | 64.000 | 3 PKG | CY/CY* |
| TTNU4696488 | FEX8808948 | 40GP | 9000.00 | 52.000 | 5 PKG | CY/CY* |
| XINU8199461 | FEX9086419 | 40HC | 19000.00 | 64.000 | 3 PKG | CY/CY* |

*Shipper Load Count and Sealed

# TERMS &CONDITION

**1.DEFITIONS**

In this Bill of Lading the word(s)

**'Carrier'** Means "Seamaster Logistics Inc"

'Merchant' Includes any Person who at any time has been or becomes the Shipper, Holder, Consignee, Receiver of the Goods, any Person who owns or is entitled to the possession of the Goods or of this Bill of Lading and any Person acting on behalf of any such Person

**'Holder'** Means any Person for the time being in possession of (or entitled to the possession of) this Bill of Lading

**'Person'** Includes an individual, group, company or other entity

**'Sub-Contractor'** Includes (but is not limited to) owners and operators of any vessels (other than the Carrier), stevedores, terminal and group age operators, road, rail and air transport operators and any independent contractor employed by the Carrier in performance of the Carriage and any sub-sub-contractors thereof

**'Indemnify'** Includes defend, indemnify and hold harmless whether or not the obligation to indemnify arises out of negligent or non-negligent acts or omissions of the Carrier, his servants, agents or Sub-Contractors

**'Goods'** Means the whole or any part of the cargo received from the Shipper and includes the packing and any equipment or Container not supplied by or on behalf of the Carrier

**'Container'** Includes any container, trailer, transportable tank, flat or pallet, or any similar article used to consolidate goods and any ancillary equipment

**'Carriage'** Means the whole or any part of operations and services undertaken by the Carrier in respect of the Goods covered by this Bill of Lading

**'Port of Loading'** Means any port at which the Goods are loaded on board any Vessel (which may not necessarily the Vessel named overleaf) for Carriage under this Bill of Lading

**'Port of Discharge'** Means any port at which the Goods are discharged from any Vessel (which may not necessarily the Vessel named overleaf) after Carriage under this Bill of Lading

**'Vessel'** Means any waterborne craft used in the Carriage under this Bill of Lading which may be a feeder vessel or an ocean vessel

**'Combined Transport'** Arises if the Place of Receipt and/or the Place of Delivery are indicated on the face hereof in the relevant spaces

**'Port to Port'** Arises if the Carriage is not Combined Transport

**'Shipped on Board'** Relates only to the Container into which the Goods are manifested

**'Freight'** Includes all charges payable to the Carrier in accordance with the applicable Tariff and this Bill of Lading

**'Hague Rules'** Means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25th August, 1924 and includes the amendments by the Protocol signed at Brussels on 23rd February, 1968, but only if such amendments are compulsorily applicable to this Bill of Lading (It is expressly provided that nothing in this Bill of Lading shall be construed as contractually applying said rules as amended by said Protocol)

**2. CARRIER'S TARIFF**

The terms and conditions of the Carrier's applicable Tariff are incorporated herein Particular attention is drawn to the terms and conditions therein relating to container and vehicle demurrage Copies of the relevant provisions of the applicable Tariff are obtainable from the Carrier of his agents upon request In the case of inconsistency between this Bill of Lading and the applicable Tariff, this Bill of Lading shall prevail

**3. WARRANTY**

The Merchant warrants that in agreeing to the terms and conditions hereof he is, or has the authority of, the Person owning or entitled to the possession of the Goods and this Bill of Lading

**4. SUB-CONTRACTING AND INDEMNITY**

(1) The Carrier shall be entitled to sub-contract the Carriage on any terms whatsoever

(2) The Merchant undertakes that no claim or allegation shall be made against any Person whomsoever by whom the Carriage is performed or undertaken (including all Sub-Contractors of the Carrier), other than the Carrier, which imposes or attempts to impose up on any such Person, or any vessel owned by any such Person any liability whatsoever in connection with the Goods or the Carriage of the Goods, whether or not arising out of negligence on the part of such Person and, if any such claim or allegation should nevertheless be made, the Merchant will indemnify the Carrier against all consequences thereof Without prejudice to the foregoing every such Person or vessel shall have the benefit of every right, defence, limitation and liberty of whatsoever nature herein contained or otherwise available to the Carrier (including, but not limited to, Clause 24 hereof)as if such provisions were expressly for his benefit and, in entering into this contract, the Carrier, to the extent of these provisions, does so not only on his own behalf but also as agent and trustee for such Persons or vessel

(3) The provisions of Clause 4 (2), including but not limited to the undertakings of the Merchant contained therein, shall extend to claims or allegations of whatsoever nature against other Persons chartering space on the carrying Vessel

(4) The Merchant further undertakes that no claim or allegation in respect the Goods shall be made against the Carrier by any Person, other than in accordance with the terms and conditions of this Bill of Lading, which imposes or attempts to impose upon the Carrier any liability whatsoever in connection with the Goods or the Carriage of the Goods, whether or not arising out of negligence on the part of the Carrier and, if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof

**5. CARRIER'S RESPONSIBILITY**

Port-to-Port Shipment

If Carriage is Port-to-Port, the liability (if any) of the Carrier for loss, damage or delay to the Goods occurring from and during loading onto any Vessel up to and during discharge from that Vessel or from another Vessel into which the Goods have been transshipped shall be determined in accordance with any national law making the Hague Rules compulsorily applicable to this Bill of Lading, or in any other case in accordance with the Hague Rules, Articles 1-8 inclusive only.

Unless Clause 25 applies, the Carrier shall be under no liability whatsoever for loss, damage or delay to the Goods, howsoever occurring, if such loss, damage or delay arises prior to loading onto or subsequent to discharge from a Vessel Notwithstanding the above, in case and to the extent that any applicable law provides for any additional period of responsibility, the Carrier shall have the benefit of every right, defence, limitation and liberty in the Hague Rules as applied by this clause during that period, notwithstanding that the loss, damage or delay did not occur at sea.

In the event of the Goods being discharged at a port other than the Port of Discharge nominated in this Bill of Lading and forwarded to the nominated Port of Discharge by whatever means, the Hague Rules as referred to in chapter 1 of this clause shall continue to apply until delivery at the nominated Port of Discharge (or elsewhere), notwithstanding that Carriage may not be by sea

**6. CARRIER'S RESPONSIBILITY**

Combined Transport

If Carriage is Combined Transport, the Carrier undertakes to perform and/or in his own name to procure performance of the Carriage from the Place of Receipt or the Port of Loading, whichever is applicable, to the Port of Discharge or the Place of Delivery, whichever is applicable, and, save as is otherwise provided for in this Bill of Lading, the Carrier shall be liable for loss, damage or delay occurring during the Carriage only to the extent set out below

(1) If the stage of the Carriage during which loss, damage or delay occurred is not known

(a) Exclusions If the stage of the Carriage during which the loss, damage or delay occurred is not known, the Carrier shall be relieved of liability for any loss, damage or delay if such loss, damage or delay was caused by

(i) an act or omission of the Merchant, (ii) insufficiency of or defective condition of packing or marking, (iii) handling, loading, stowage or unloading of the Goods by or on behalf of the Merchant (See Clause 8), (iv) inherent vice of the Goods, (v) strike, lock-out, stoppage or restraint of labor, from whatever cause, whether partial of general, (vi) a nuclear incident, (vii) any cause or event which the Carrier could not avoid and the consequences whereof he could not prevent by the exercise of reasonable diligence, (viii) any act or omission of the Carrier the consequences of which he could not reasonably have foreseen, (ix) compliance with instructions of any Person entitled to give them

(b) Burden of Proof The burden of proof that the loss, damage or delay was due to one or more of the causes or events specified in the Clause 6 (1) shall rest upon the Carrier, save that if the Carrier establishes that, in the circumstances of the case, the loss, damage or delay could be attributed to one or more of the causes or events specified in this Clause 6(1) (a) (ii), (iii) or (iv), it shall be presumed that it was so caused The Merchant shall, however, be entitled to prove that the loss, damage or delay was not, in fact, caused either wholly or partly by one or more of these causes or events

(c) Limitation of Liability Except as provided in Clauses 7(2), 7(3), and 27, if Clause 6(1) operates total compensation for loss or damage shall in no circumstances whatsoever and howsoever arising exceed 2 SDR s per kilo the gross weight of the Goods lost or damaged (SDR means Special Drawing Right as defined by the International Monetary Fund). Limitation of liability for delay shall be as provided in the applicable international convention or national law, in the absence of which the Carrier accepts no liability whatsoever for delay, howsoever caused (see Clause 7(4))

(2) If the stage of the Carriage during which the loss, damage or delay occurred is known Notwithstanding anything provided for in Clause 6 (l) and subject to Clauses 15 and 16, if it is known during which stage of the Carriage the loss, damage or delay occurred, the liability of the Carrier in respect of such loss, damage or delay shall be determined

(a) By the provisions contained in any international convention or national law which provisions

(i) cannot be departed from by private contract to the Merchant, and (ii) would have applied if the Merchant had made a separate and direct contract with the Carrier in respect of the particular stage of the Carriage during which the loss, damage or delay occurred and received as evidence thereof any particular document which must be issued in order to make such international convention or national law applicable, or

(b) If no international convention or national law would apply by virtue of Clause 6 (2) (a), by the Hague Rules Articles 1 -8 inclusive, only if the loss, damage or delay is known to have occurred during waterborne Carriage, or

(c) by the provisions of Clause 6 (1) if the provisions of Clause 6 (2) (a) and (b) above do not apply For the purposes of Clause 6 (2), references in the Hague Rules to carriage by sea shall be deemed to include references to all waterborne Carriage and the Hague Rules shall be construed accordingly

(3) If the Place of Receipt or Place of Delivery is not named on the face hereof Subject to Clauses 5 and 25,

(a) If the Place of Receipt is not named on the face hereof, the Carrier shall be under no liability whatsoever for loss, damage or delay to the Goods, howsoever occurring, if such loss, damage or delay arises prior to loading onto a Vessel

(b) If the Place of Delivery is not named on the face hereof, the Carrier shall be under no liability whatsoever for loss, damage or delay to the Goods, howsoever occurring, if such loss, damage or delay arises subsequent to discharge from a Vessel

(4) Notice of Claim

Unless Clause 25 applies, the Carrier shall be deemed prima facie to have effected timely delivery of the Goods as described in this Bill of Lading unless notice of loss, damage or delay to the Goods, indicating the general nature of such loss, damage or delay, shall have been given in writing to the Carrier or to his representative at the Place of Delivery (or the Port of Discharge if no Place of Delivery is named on the face hereof) before or at the time of removal of the Goods into the custody of the Person entitled to delivery thereof under this Bill of Lading, or, if the loss or damage is not apparent, within three working days thereafter

(5) Time-bar

Unless Clause 25 applies, the Carrier shall be discharged of all liability whatsoever in respect of the Goods, unless suit is brought and notice thereof given to the Carrier within nine months after delivery of the Goods or, if the Goods are not delivered, ten months after the date of issue of this Bill of Lading

**7. SUNDRY LIABILITY PROVISIONS**

(1) Basis of Compensation

Unless Clause 25 applies, compensation shall be calculated by reference to the value of the Goods at the place and time they are delivered to the Merchant, or at the place and time they should have been delivered For the purpose of determining the extent of the Carrier's liability for loss, damage or delay to the Goods, the sound value of the Goods is agreed to be the FOB/FCA Invoice value plus freight and insurance if paid

(2) Hague Rules Limitation

If the Hague Rules are applicable by national law, the liability of the Carrier shall in no event exceed the limit provided in the applicable national law If the Hague Rules are applicable otherwise than by national law, in determining the liability of the Carrier the liability shall in no event exceed 100 sterling per package or unit

(3) Ad Valorem

The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods, and that higher compensation than that provided for in this Bill of Lading may not be claimed unless, with the consent of the Carrier, the value of the Goods declared by the Shipper prior to the commencement of the Carriage is stated in this Bill of Lading and extra Freight paid, if required In that case, the amount of the declared value shall be substituted for the limits laid down in this Bill of Lading. Any partial loss or damage shall be adjusted pro rata on the basis of such declared value.

(4) Delay

a) Unless Clause 25 applies, the Carrier does not undertake that the Goods shall arrive at the Port of Discharge or Place of Delivery at any particular time or to meet any particular market or use Besides, the Carrier shall in no circumstances whatsoever and howsoever arising be liable for direct, indirect or consequential loss of damage caused by delay.

b) However, if Clause 25 applies, unless a latest date of delivery is shown on the face hereof and any required premium paid, timely delivery shall be considered to have been made if the Goods are made available to the Merchant at the Port of Discharge or Place of Delivery, as the case may be, within 60 days after the date published in the Carrier's Schedule against the Port of Discharge nominated therein for the relevant ocean Vessel The Carrier shall be entitled to all the defenses, exceptions and limitations provided in the applicable international convention or national law and this Bill of Lading

(5) Scope of Application

(a) The terms and conditions of this Bill of Lading shall at all times govern all responsibilities of the Carrier in connection with or arising out of the supply of a Container to the Merchant, not only during the Carriage, but also during the periods prior to and/or subsequent to the Carriage

(b) The rights, defenses, limitations and liberties of whatsoever nature provided for in this Bill of Lading shall apply in any action against the Carrier for loss or damage or delay, howsoever occurring and whether the action be founded in contract or in tort and even if the loss, damage or delay arose as a result of un-seaworthiness, negligence or breach of a fundamental term of this contract

(c) Save as is otherwise provided for in this Bill of Lading, the Carrier shall in no circumstances whatsoever and howsoever arising be liable for direct or indirect or consequential loss or damage or loss of profits.

(6) Inspection by Authorities

If by order of the authorities at any place, a Container has to be opened for the Goods to be inspected, the Carrier will not be liable for any loss, damage or delay incurred as a result of any opening, unpacking inspection or repackaging. The Carrier shall be entitled to recover the cost of such opening, unpacking, inspection and repackaging from the Merchant

**8. SHIPPER-PACKED CONTAINERS**

If a Container has not been packed by or on behalf of the Carrier,

(1) The Carrier shall not be liable for loss, damage or delay to the Goods caused by matters beyond his control, including inter alia, without prejudice to the generality of this exclusion,

(a) the manner in which the Container has been packed, or (b) the unsuitability of the Goods for Carriage in the Container supplied, or (c) the unsuitability or defective condition of the Container or the incorrect setting of any temperature controls thereof provided that, if the Container has been supplied by or on behalf of the Carrier, this unsuitability, defective condition or incorrect setting could have been apparent upon inspection by the Merchant at or prior to the time when the Container was packed, or (d) packing temperature controlled Goods that are not at the correct temperature for Carriage

(2) The Shipper is responsible for the packing and sealing of all Shipper-Packed Containers and, if a Shipper-Packed Container is delivered by the Carrier with its original seal as affixed by the Shipper intact, the Carrier shall not be liable for any shortage of Goods ascertained at delivery If, nevertheless, a claim for shortage is made against the Carrier by any Person whomsoever, the Merchant agrees to Indemnify the Carrier against the cost of any such claims plus any costs incurred in respect thereof

(3) The Merchant shall indemnify the Carrier against any loss, damage, liability or expense whatsoever and howsoever arising caused by one or more of the matters referred to in Clause 8 (l), save that, if the loss, damage, liability or expense was caused by a matter referred to in Clause 8 (1) (c), the Merchant shall not be liable to indemnify the Carrier in respect thereof unless the proviso referred to in that Clause applies

**9. INSPECTION OF GOODS**

The Carrier or any Person to whom the Carrier has sub-contracted the Carriage or any Person authorized by the Carrier shall be entitled, but under no obligation, to open any Container or package at any time and to inspect, weigh and/or measure the Goods and/or weigh the Container

**10. CARRIAGE AFFECTED BY CONDITION OF GOODS**

If it appears at any time that, due to their condition, the Goods cannot safely or properly be carried or carried further, either at all or without incurring any additional expense or taking any measure in relation to the Container or the Goods, the Carrier may, without notice to the Merchant (but as his agent only), take any measure and/or incur any additional expense to carry or to continue the carriage thereof, and/or sell or dispose of the Goods, and/or abandon the Carriage and/or store them ashore or afloat, under cover or in the open, at any place, whichever the Carrier, in his absolute discretion, considers most appropriate, which abandonment, storage, sale or disposal shall be deemed to constitute due delivery under this Bill of Lading The Merchant shall indemnify the Carrier against any additional expense incurred

**11. DESCRIPTION OF GOODS**

(1) This Bill of Lading shall be prima facie evidence of the receipt by the Carrier from the Shipper in apparent good order and condition, except as otherwise noted, of the total number of Containers or other packages or units indicated in the box on the face hereof entitled, "Total NO of Containers/Packages received by the Carrier".

(2) Except as provided in Clause 11 (1), no representation is made by the Carrier as to the weight, contents, measure, quantity, quality, description, condition, marks, numbers or value of the Goods, and the Carrier shall be under no responsibility whatsoever in respect of such description or particulars, which are unknown to him It is agreed that, whilst he retains the right so to do at his sole discretion, the Carrier is not at any time under any obligation to weigh any Container or open any Container to make any check on the Goods therein or their stowage (see Clause 9).

(3) If any particulars of any Letter of Credit and/or Import License and/or Sale Contract and/or Invoice or Order number and/or details of any contract to which the Carrier is not a party are shown on the face of this Bill of Lading, such particulars are included solely at the request of the Merchant for his convenience The Merchant agrees that the inclusion of such particulars shall not be regarded as a declaration of value and in no way increases the Carrier's liability under this Bill of Lading. The Merchant further agrees to indemnify the Carrier against all consequences of including such particulars in this Bill of Lading The Merchant acknowledges that, except when the provisions of Clause7 (3) apply, the value of the Goods is unknown to the

Carrier

**12. SHIPPER'S/MERCHANT'S RESPONSIBILITY**

1 All of the Persons coming within the definition of Merchant in Clause 1 shall be jointly and severally liable to the Carrier for the due fulfillment of all obligations undertaken by the Merchant in this Bill of Lading and remain so liable throughout Carriage, notwithstanding their having transferred this Bill of Lading and/or title to the Goods to another party

2. The Shipper warrants to the Carrier that the particulars relating to the Goods as set out overleaf have been checked by the Shipper on receipt of this Bill of Lading and that such particulars, and any other particulars furnished by or on behalf of the Shipper, are adequate and correct The Shipper also warrants that the Goods are lawful goods and contain no contraband If the Container is not supplied by or on behalf of the Carrier, the Shipper further warrants that the Container meets all ISO and/or other (inter-) national safety standards and is fit in all respects for Carriage by the Carrier

3 The Merchant shall indemnify the Carrier against all claims, losses, damages, fines and expenses arising or resulting from any breach of any of the warranties in Clause 12(2) hereof or from any other cause in connection with the Goods for which the Carrier is not responsible

4 The Merchant shall comply with all regulations or requirements of Customs, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts, expenses or losses (including, without prejudice to the generality of the foregoing, Freight for any additional Carriage undertaken) incurred or suffered in respect of the Goods, and shall indemnify the Carrier in respect thereof

5. If Containers supplied by or on behalf of the Carrier are unpacked at the Merchant's premises, the Merchant is responsible for returning the empty Containers, free from labels etc , with interiors brushed, clean, odor free and in every respect fit for immediate reuse, to the point or place designated by the Carrier, his servants or agents, within the time prescribed Should a Container not be returned as required above within the time prescribed, the Carrier is entitled to take such steps as he considers appropriate for the account of the Merchant and the Merchant shall be liable for any detention, loss or expense incurred as a result thereof

6 Containers released into the care of the Merchant for packing unpacking or any other purpose whatsoever are at the sole risk of the Merchant until redelivered to the Carrier The Merchant shall indemnify the Carrier for all loss and/or damage to such Containers occurring during such period The Merchant shall also indemnify the Carrier for any loss, damage, injury, fines or expenses caused or incurred by such Containers whilst in his control

**13. FREIGHT**

(1) Freight shall be deemed fully earned on receipt of the Goods by the Carrier and shall be paid an non-returnable in any event

(2) The Merchant's attention is drawn to the stipulations concerning currency in which the Freight is to be paid, rate of exchange, devaluation and other contingencies relative to Freight in the applicable Tariff

(3) Freight has been calculated on the basis of particulars furnished by or on behalf of the Shipper If the particulars furnished by or on behalf of the Shipper are incorrect, it is agreed that a sum equal to double the correct Freight less the Freight charged shall be payable as liquidated damages to the Carrier

(4) All Freight shall be paid without any set-off, counter-claim, deduction or stay of execution before delivery of the Goods

**14. LIEN**

The Carrier shall have a lien on the Goods and any documents relating thereto for all sums payable to the Carrier under this contract The Carrier shall also have a lien against the Merchant on the Goods and any documents relating thereto for all sums due from him to the Carrier under any other contract The Carrier may exercise his lien at any time and at any place at his sole discretion, whether the contractual Carriage is completed or not In any event, any lien shall extend to cover the cost of recovering the sums due and for that purpose the Carrier shall have the right to sell the Goods by public auction or private treaty, without notice to the Merchant at any time and at any place at the sole discretion of the Carrier

**15. OPTIONAL STOWAGE AND DECK CARGO**

(1) The Goods may be packed by the Carrier in Containers and consolidated with other goods in Containers

(2) Goods, whether or not packed in Containers, may be carried on deck or under deck, at the sole discretion of the Carrier, without notice to the Merchant All such Goods whether carried on deck or under deck, shall participate in general average and shall be deemed to be within the definition of goods for the purposes of the Hague Rules and shall be carried subject to those Rules

(3) Notwithstanding Clause 15 (2), in the case of Goods which are stated on the face hereof as being carried on deck and which are so carried the Hague Rules shall not apply and the Carrier shall be under no liability whatsoever for loss, damage or delay, howsoever arising, whether or not caused by negligence on the part of the Carrier, his servants agents or Sub-Contractors

**16. LIVE ANIMALS**

The Hague Rules shall not apply to the Carriage of live animals, which are carried at the sole risk of the Merchant The Carrier shall be under no liability whatsoever for any injury, illness, death, delay or destruction to such live animals howsoever arising Should the Master in his sole discretion consider that any live animal is likely to be injurious to any other live animal or any person or property on board, or to cause the Vessel to be delayed or impeded in the prosecution of its voyage, than such live animal may be destroyed and thrown overboard without any liability attaching to the Carrier. The Merchant shall indemnify the Carrier against all or any extra costs incurred for any reason whatsoever in connection with the Carriage of any live animal

**17. METHODS AND ROUTES OF CARRIAGE**

(1) The Carrier may at any time and without notice to the Merchant

(a) use any means of carriage whatsoever;

(b) transfer the Goods from one conveyance to another, including but not limited to transshipping or carrying them on a Vessel other than that named on the face hereof,

(c) unpack and remove the Goods which have been packed into a Container and forward them in a Container or otherwise,

(d) proceed by any route in his discretion (whether or not the nearest or most direct or customary or advertised route), at any speed, and proceed to or stay at any place or port whatsoever, once or more often and in any order;

(e) load or unload the Goods at any place or port (whether or not such port is named overleaf as the Port of Loading or Port of Discharge) and store the Goods at any such place or port, (f) comply with any orders or recommendation given by any government or authority, or any Person acting or purporting to act as or on behalf of such government or authority, or having under the terms of any insurance on any conveyance employed by the Carrier the right to give orders or directions, (g) permit the Vessel to proceed with or without pilots, to tow or be towed, or to be dry-docked, with or without Goods and/or Containers on board

(2) The liberties set out in Clause 17 (1) may be invoked by the Carrier for any purpose whatsoever, whether or not connected with the Carriage of the Goods, including but not limited to loading or unloading other goods, bunkering, undergoing repairs, adjusting instruments, picking up or landing any persons, including but not limited to persons involved with the operation or maintenance of the Vessel and assisting vessels in all situations Anything done in accordance with Clause 17 (1) or any delay arising therefrom shall be deemed to be within the contractual Carriage and shall not be a deviation

(3) By tendering Goods for Carriage without any written request for Carriage in a specialized Container, or for Carriage otherwise than in a Container, the Merchant accepts that Carriage may properly be undertaken in a general-purpose container, carried on or under deck at the Carrier's sole discretion.

**18. MATTERS AFFECTING PERFORMANCE**

If at any time the Carriage, the Vessel or other goods on board the Vessel are or are likely to be affected by any hindrance, risk, delay, difficulty or disadvantage of any kind (other than the inability of the Goods, due to their condition, safely or properly to be carried or carried further) and howsoever arising (even thought the circumstances giving rise to such hindrance, risk, delay, difficulty or disadvantage existed at the time this contract was entered into or the Goods were received for Carriage), the Carrier (whether or not the Carriage is commenced) may, without prior notice to the Merchant and at the sole discretion of the Carrier, either

(a) Carry the Goods to the contracted Port of Discharge or Place of Delivery, whichever is applicable, by an alternative route to that indicated in this Bill of Lading or that which is usual for Goods consigned to that Port of Discharge or Place of Delivery If the Carrier elects to invoke the terms of this Clause 18 (a) then, notwithstanding the provisions of Clause 17 hereof he shall be entitled to charge such additional Freight as the Carrier may determine,

OR

(b) Suspend the Carriage of the Goods and store them ashore or afloat upon the terms of this Bill of Lading and endeavor to forward them as soon as possible, but the Carrier makes no representations as to the maximum period of such suspension of Carriage If the Carrier elects to invoke the terms of this Clause I 8 (b) then, notwithstanding the provisions of Clause I7 hereof he shall be entitled to charge such additional Freight as the Carrier may determine,

OR

(c) Abandon the Carriage of the Goods and place them at the Merchant s disposal at any place or port, which the Carrier may deem safe and convenient, whereupon the responsibility of the Carrier in respect of such Goods shall cease The Carrier shall nevertheless be entitled to full Freight on the Goods received for Carriage, and the Merchant shall pay any additional costs of the Carriage to, and delivery and storage at, such place or port, If the Carrier elects to use an alternative route under Clause 18 (a) or to suspend the Carriage under Clause 18(b) this shall not prejudice his right subsequently to abandon the Carriage

**19. DANGEROUS GOODS**

(1) No Goods which are or may become dangerous, inflammable, damaging or injurious (including radio-active materials), or which are or may become liable to damage any property whatsoever or injure any person whomsoever, shall be tendered to the Carrier for Carriage without his express consent in writing and without the Container as well as the Goods themselves being distinctly marked on the outside so as to indicate the nature and character of any such Goods and so as to comply with any applicable laws, regulations or requirements. If any such Goods are delivered to the Carrier without such written consent and/or marking, or if in the opinion of the Carrier the Goods are or are liable to become of a dangerous, inflammable, damaging or injurious nature, they may at any time be destroyed, disposed of, abandoned, or rendered harmless without compensation to the Merchant and without prejudice to the Carrier's right to Freight.

(2) The Merchant undertakes that such Goods are packed in a manner adequate to withstand the risks of Carriage having regard to their nature and in compliance with all laws or regulations, which may be applicable during the Carriage, In particular but without prejudice to the generality of this Clause 19(2), if the Goods are not packed into the Container by or on behalf of the Carrier, the Merchant undertakes that incompatible Goods are not packed in the same Container

(3) Whether or not the Merchant was aware of the nature of the Goods, the Merchant shall indemnify the Carrier against all claims, losses, damages or expenses arising in consequence of the Carriage of such Goods

(4) Nothing contained in this Clause shall deprive the Carrier of any of his rights provided for elsewhere

**20. NOTIFICATION AND DELIVERY**

(1) Any mention herein of parties to be notified of the arrival of the Goods is solely for information of the Carrier, and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation there under

(2) The Merchant shall take delivery of the Goods within the time provided in the Carrier s applicable Tariff (see Clause 2) If the Merchant fails to do so the Carrier shall be entitled, without notice, to unpack the Goods if packed in Containers and/or to store the Goods ashore, afloat, in the open or under cover, at the sole risk of the Merchant. Such storage shall constitute due delivery here under, and thereupon the liability of the Carrier in respect of the Goods stored as aforesaid shall wholly cease, and the costs of such storage (if paid or payable by the Carrier or any agent or Sub-Contractor of the Carrier) shall forthwith upon demand be paid by the Merchant to the Carrier.

(3) If the Merchant fails to take delivery of the Goods within thirty days of delivery becoming due under Clause 20(2), or if in the opinion of the Carrier they are likely to deteriorate, decay, become worthless or incur charges whether for storage or otherwise in excess of their value, the Carrier may , without prejudice to any other rights which he may have against the Merchant, without notice and without any responsibility whatsoever attaching to him, sell, destroy or dispose of the Goods and apply any proceeds of sale in reduction of the sums due to the Carrier from the Merchant

(4) Refusal by the Merchant to take delivery of the Goods in accordance with the terms of this Clause and/or to mitigate any loss or damage thereto shall constitute a waiver by the Merchant to the Carrier of any claim whatsoever relating to the Goods or the Carriage thereof

(5) In the event of the Carrier agreeing to a request of the Merchant to amend the Place of Delivery stated herein without stipulating any particular terms and conditions to apply during said amended Carriage, to the extent provided by the applicable Tariff the terms and conditions of this Bill of Lading shall continue to apply, but only until the Goods are delivered by the Carrier to the Merchant at the amended Place of Delivery Once the applicable Tariff ceases to provide for the continued application of the terms and conditions of the Bill of Lading or, if the Carrier declines to extend the Bill of Lading terms to the amended Place of Delivery, then the Carrier shall act as agent only of the Merchant in arranging for delivery of the Goods to the amended Place of Delivery but shall then be under no liability whatsoever for loss, damage or delay to the Goods, howsoever arising, for the period of amended Carriage If the Carrier agrees to make multiple point deliveries of an FCL Container, this contract terminates upon presentation of the sealed Container at the first place of delivery. Thereafter the Carrier acts as agent only to arrange any further deliveries.

(6) If, at the place where the Carrier is entitled to call upon the Merchant to take delivery of the Goods under Clause 20(2) the Carrier is obliged to hand over the Goods into the custody of any Customs, port or other authority, such hand-over shall constitute due delivery to the Merchant under this Bill of Lading

(7) This Bill of Lading shall not be a negotiable document of title unless consigned 'to order', 'to the order of'..' or 'to bearer'. If not so consigned but instead consigned directly to nominated party, this shall be a 'Straight' Bill and, at the sole discretion of the Carrier, delivery may be made to the nominated party only upon proof of identity, as if this Bill of Lading were a Waybill. Such delivery shall constitute due delivery hereunder

**21. FCL MULTIPLE BILLS OF LADING**

(1) Goods will only be delivered in a Container to the Merchant if all Bills of Lading in respect of the contents of the Container have been surrendered authorizing delivery to a single Merchant at single Place of Delivery In the event that this requirement is not fulfilled the Carrier may unpack the Container and, in respect of Goods for which Bills of Lading have been surrendered, deliver them to the Merchant on an LCL basis Such delivery shall constitute due delivery hereunder, but will only be effected against payment by the Merchant of LCL Service Charges and any charges appropriate to LCL Goods (as laid down in the Tariff) together with the actual costs incurred for any additional services rendered.

(2) If this is an FCL multiple Bill of Lading (as evidenced by the qualification of the tally acknowledged overleaf to the effect that it is 'One of ... part cargoes in the Container'), then the Goods detailed overleaf are said to comprise part of the contents of the Container indicated. If the Carrier is required to deliver the Goods to more than one Merchant and if all or part of total Goods within the Container consists of bulk Goods or unappropriated Goods, or is or becomes mixed or unmarked or unidentifiable, the Holders of Bills of Lading relating to Goods within the Container shall take delivery thereof (including any damaged portion) and bear any shortage in such proportions as the Carrier shall in his absolute discretion determine Such delivery shall constitute due delivery hereunder

**22. GENERAL AVERAGE & SALVAGE**

(1) In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, due to negligence or not, for which, or for the consequences of which, the Carrier is not responsible, by statute, contract or otherwise, the Merchant shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the Goods

(2) Any general average on a Vessel operated by the Carrier shall be adjusted according to the York/Antwerp Rules off 1994 or any subsequent amendment thereto authorized by the CMI at any port or place and in any currency at the option of and by an adjuster appointed by the Carrier, with the test of reasonableness in the Rule Paramount being made on the basis of what was known at the time of the general average act and not subsequently with the benefit of hindsight Any general average on a Vessel not operated by the Carrier (whether a seagoing or inland waterways vessel) shall be adjusted according to the requirements of the operator of that Vessel In either case the Merchant shall give such cash deposit or other security, as the Carrier may deem sufficient to cover the estimated general average contribution of the Goods Any security, other than cash deposits, must be given by a party acceptable to and with assets in a jurisdiction nominated by the Carrier. Such security must be provided before delivery if the Carrier so requires or, if the Carrier does not so require, within three months of the delivery of the Goods, whether or not at the time of delivery the Merchant had notice of the Carrier's lien. The Carrier shall be under no obligation to exercise any lien for general average contribution due to the Merchant.

(3) Conversion into the currency of the adjustment shall be calculated at the rate prevailing on the date of payment for disbursements and on the date of completion of discharge of the Vessel for allowances, contributory values, etc

(4) If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers

(5) In the event of the Master in his sole discretion or in consultation with owners considering that salvage services are needed, the Merchant agrees that the Master may act as his agent to procure such services to Goods and that the Carrier may act as his agent to settle salvage remuneration, without any prior consultation with the Merchant in both cases

(6) If the merchant contests payment of contribution to general average, salvage, salvage charges and/or special charges to Goods on any grounds whatsoever or fails to make payment of contribution within three months of the issue of the adjustment thereof, whether or not prior security has been provided, the merchant shall pay interest for the period in excess of three months on the contribution due at two percent per annum above the base lending rate of the central bank of the country in whose currency the adjustment is issued, in addition to the contribution due

(7) In the event of any general average credit balances due to Merchants still being unclaimed 5 years after the date of issue off the adjustment, these shall be paid to the Carrier, who will hold such credit balances pending application by the Merchants entitled thereto

**23. VRIATION OF THE CONTRACT**

No servant or agent of the Carrier shall have the power to waive or vary any of the terms of this Bill of Lading, unless such waiver or variation is in writing and is specifically authorized or ratified in writing by the Carrier

**24. LAW AND JURISDICTION**

(1) Unless Clause 25 or 27 applies, any claim against the Carrier under this Bill of Lading shall be determined only according to English law and exclusively in the High Court of Justice in London The Merchant irrevocably submits to this jurisdiction

(2) The Carrier shall be entitled to pursue any claim against the Merchant in London according to English Law or in any jurisdiction in which the Merchant has assets but then in accordance with the local law of that jurisdiction

(3) Nothing herein shall prevent the parties to any claim or dispute under this Bill of Lading from agreeing to submit the claim or dispute to arbitration by mutually acceptable arbitrator(s) on mutually acceptable terms at a mutually acceptable venue

**25. VALIDITY**

In the event that anything herein contained is inconsistent with any applicable international convention or national law, which cannot be departed from by private contract, the provisions hereof shall to the extent of such inconsistency but no further be null and void.

**26. LIMITATION OF LIABILITY**

For the avoidance of doubt, it is hereby agreed by the Merchant that the Carrier qualifies and shall be regarded as a person entitled to limit liability under the relevant Convention on the Limitation of Liability for Maritime Claims, notwithstanding that the Carrier may have procured space on board the Vessel concerned by means of a Slot Charter party, Bill of Lading or some other contract of carriage Except to the extent that mandatory law to the contrary applies in the appropriate jurisdiction (in which case said law shall apply), the size of the fund to which the Carrier may limit liability shall be identical to that proportion of the limitation fund by which the actual carrier is entitled to limit which is (or would be) available for the Carrier s claims against the actual carrier

**27. USA CLAUSE PARAMONUNT (If applicable)**

(1) If Carriage includes Carriage to, from or through a port in the United States America, this Bill of Lading shall be subject to the United States Carriage of Goods by Sea Act 1936 (US COGSA), the terms of which are incorporated herein and shall be paramount throughout Carriage by sea and the Goods are in the actual custody of the Carrier or his Sub-Contractor at the sea terminal in the United States of America before loading onto the vessel or after discharge therefrom, as the case may be.

(2) The Carrier shall not be liable in any capacity whatsoever for loss, damage or delay to of America away from the sea the Goods while the Goods are in the United States terminal and are not in the actual custody of the Carrier. At those times the Carrier acts as agent only to procure Carriage by Persons (one or more) under the usual term and of those Persons. If for any reason, the Carrier is denied the right to act as conditions agent only at these times, his liability for loss, damage or delay to the goods shall be determined in accordance with Clause 6 hereof

(3) If US COGSA applies the liability of the Carrier and/or the Vessel shall not exceed US$ 500 per package or customary freight unit (in accordance with Section 1304(5) of the Goods has been declared on the face hereof in which case thereof) unless the value Clause 7(3) shall apply

(4) Notwithstanding the provisions of Clause 24, if Carriage includes Carriage to from or through a port in the United States of America, the Merchant may refer any claim or dispute to the United States District Court for the Southern District of New York in accordance with the laws of the United States of America