# EXHIBIT B

See website for large version of the reverse | Ver página Web para términos y condiciones | Смотрите веб-сайт для ознакомления с условиями и положениями | 提单的条款和条件详请见网站 | www.msc.com

**MEDITERRANEAN SHIPPING COMPANY S.A.**
12-14, chemin Rieu - CH -1208 GENEVA, Switzerland
website: www.msc.com SCAC Code: MSCU

**SEA WAYBILL No.** **MSCUQS946666**
**NOT NEGOTIABLE - COPY**
"Port-To-Port" or "Combined Transport"(see Clause 1)

NO.& SEQUENCE OF SEA WAYBILLS
NO. OF RIDER PAGES: 2 Two

SHIPPER:
SEAMASTER GLOBAL FORWARDING (SHANGHAI) LIMITED QINGDAO BRANCH
ROOM 807 SUNSHINE TOWER NO. 61 HONG KONG (M) ROAD, QINGDAO CHINA
Qingdao, 266001
Phone: 8653280773236
Fax: 8653280773231

CONSIGNEE:
TRANSCO SHIPPING CORP
ONE CROSS ISLAND PLAZA SUITE 120'ROSEDALE,NY 11422
TEL:718-528-5000
FAX: 1 866 252 2010

NOTIFY PARTIES : (No responsibility shall attach to Carrier or to his Agent for failure to notify - see Clause 20)
TRANSCO SHIPPING CORP
ONE CROSS ISLAND PLAZA SUITE 120'ROSEDALE,NY 11422
TEL:718-528-5000
FAX: 1 866 252 2010

CARRIER'S AGENTS ENDORSEMENTS: (Include Agent(s) at POD)
SHIPPER'S LOAD, COUNT AND SEALED. Carrier has no liability or responsibility whatsoever for thermal loss or damage to the goods by reason of natural variations in atmospheric temperatures during the winter period, and / or caused by inadequate packing of the Goods for carriage in dry-van containers, and / or inherent vice of the Goods, in such temperatures.
FCLFCL
Lloyds/IMO Number: 9311696

PORT OF DISCHARGE AGENT:
MEDITERRANEAN SHIPPING COMPANY (USA)
INC.8240 NW 52nd Terrace suite 200
Miami, FL 33166
Phone : 305 477 9277
Fax : 305 477 3580

| VESSEL AND VOYAGE NO (see Clause 8 & 9) | PORT OF LOADING | PLACE OF RECEIPT: (Combined Transport ONLY - see Clause 1 & 5.2) |
|---|---|---|
| SAFMARINE MERU - 618E | Qingdao | XXXXXXXXXXXXXXX |

| BOOKING REF. (or) SHIPPER'S REF. | PORT OF DISCHARGE | PLACE OF DELIVERY : (Combined Transport ONLY - see Clause 1 & 5.2) |
|---|---|---|
| 177PHYHYQ84002VP — Service Contract Number 16-265TPC-823-E | Miami, United States | XXXXXXXXXXXXXXX |

PARTICULARS FURNISHED BY THE SHIPPER - NOT CHECKED BY CARRIER - CARRIER NOT RESPONSIBLE (see Clause 14)

| Container Numbers, Seal Numbers and Marks | Description of Packages and Goods (Continued on attached Bill of Lading Rider pages(s), if applicable) | Gross Cargo Weight | Measurement |
|---|---|---|---|
| | **Please see attached RIDER for Container / Cargo Description(s).**<br>4 x 40' DRY VAN<br>7 x 40' HIGH CUBE<br>Total Items : 50<br>Total Gross Weight : 160000.000 Kgs.<br>**Freight Collect**<br>SAID TO CONTAIN | | |

FREIGHT & CHARGE: Cargo shall not be delivered unless Freight & Charges are paid(see Clause 16)

| FREIGHT & CHARGES | BASIS | RATE | PREPAID | COLLECT |
|---|---|---|---|---|
| | | | | |

RECEIVED by the Carrier from the Shipper in apparent good order and condition unless otherwise stated herein the total number or quantity of containers or other packages or units indicated in box entitled "Carrier's Receipt" for carriage subject to all the term hereof from the Place of Receipt or the Port of Loading, to the Port of Discharge or Place of Delivery, whichever is applicable. IN ACCEPTING THIS SEA WAYBILL THE SHIPPER EXPRESSLY ACCEPTS AND AGREES TO, ON HIS OWN BEHALF AND ON BEHALF OF THE CONSIGNEE, THE OWNER OF GOODS AND THE MERCHANT, AND WARRANTS HE HAS AUTHORITY TO DO SO. ALL THE TERMS AND CONDITIONS WHETHER PRINTED, STAMPED OR OTHERWISE INCORPORATED ON THIS SIDE AND ON THE REVERSE SIDE AND TERMS AND CONDITIONS OF THE CARRIER'S APPLICABLE TARIFF AS IF THEY WERE ALL SIGNED BY THE SHIPPER.

Unless instructed otherwise in writing by the Shipper delivery of the Goods will be made only to the Consignee or his authorized representatives. This Sea Waybill is n[illegible] a document of title to the Goods and delivery will made, after payment of any outstanding Freight and changes, only on provision of proper proof of identity and of authorization at the Port of Discharge or Place of Delivery, as appropriate, without th[illegible] need to produce or surrender a copy of this Sea Waybill.

IN WITNESS WHEREOF the Carrier, Master or their Agent has signed this Sea Waybill.

CHINA MARINE SHIPPING AGENCY SHANDONG COMPANY LIMITED

SIGNED on behalf of the Carrier MSC Mediterranean Shipping Company S.A. by As Agent
AS AGENT FOR THE CARRIER OF B/L TITLE SHOWED(12)

| DECLARED VALUE (Only applicable if Ad Valorem charges paid - see Clause 7.3) | CARRIER'S RECEIPT (No. of Cntrs or Pkgs rcvd by Carrier - see Clause 14.1) |
|---|---|
| XXXXXXXXXXXXXXX | 11 cntrs |

| PLACE AND DATE OF ISSUE | SHIPPED ON BOARD DATE |
|---|---|
| Qingdao, China 09-May-2016 | 07-May-2016 |

176

A 219998202

Sea Waybill Standard Edition - 02/2015 TERMS CONTINUED ON REVERSE

See website for large version of the reverse | Ver pagina Web para términos y condiciones | Смотрите веб-сайт для ознакомления с условиями и положениями | 提单的条款和条件详请见网站 | www.msc.com

**MEDITERRANEAN SHIPPING COMPANY S.A.**
12-14, chemin Rieu - CH -1208 GENEVA, Switzerland
website: www.msc.com SCAC Code: MSCU

**SEA WAYBILL No.** **MSCUQS946666**
**RIDER PAGE**
**Page 1 of 2**

CONTINUATION PARTICULARS FURNISHED BY THE SHIPPER - NOT CHECKED BY CARRIER - CARRIER NOT RESPONSIBLE (see Clause 14)

| Container Numbers, Seal Numbers and Marks | Description of Packages and Goods (Continued on attached Bill of Lading Rider pages(s), if applicable) | Gross Cargo Weight | Measurement |
|---|---|---|---|
| INBU5024494<br>40' DRY VAN<br>Seal Number:<br>FEX9110137<br>Tare Weight: 3,830 kgs.<br>Marks and Numbers: N/M | 5 Package(s) of CAR STACKER<br>N/A:PARK PLUS,INC<br>N/A CODE:16-265TPC-823<br>THIS SHIPMENT CONTAINS NO WOOD PACKING MATERIALS<br>SCAC CODE:SMMB<br>CY/CY<br>FREIGHT COLLECT | 9,000.000 kgs. | 52.000 cu. m. |
| FSCU4614433<br>40' DRY VAN<br>Seal Number:<br>FEX9086420<br>Tare Weight: 3,720 kgs.<br>Marks and Numbers: N/M | 5 Package(s) of CAR STACKER<br>N/A:PARK PLUS,INC<br>N/A CODE:16-265TPC-823<br>THIS SHIPMENT CONTAINS NO WOOD PACKING MATERIALS<br>SCAC CODE:SMMB<br>CY/CY<br>FREIGHT COLLECT | 9,000.000 kgs. | 52.000 cu. m. |
| GLDU4036194<br>40' DRY VAN<br>Seal Number:<br>FEX8808947<br>Tare Weight: 3,750 kgs.<br>Marks and Numbers: N/M | 5 Package(s) of CAR STACKER<br>N/A:PARK PLUS,INC<br>N/A CODE:16-265TPC-823<br>THIS SHIPMENT CONTAINS NO WOOD PACKING MATERIALS<br>SCAC CODE:SMMB<br>CY/CY<br>FREIGHT COLLECT | 9,000.000 kgs. | 52.000 cu. m. |
| TTNU4696488<br>40' DRY VAN<br>Seal Number:<br>FEX8808948<br>Tare Weight: 3,660 kgs.<br>Marks and Numbers: N/M | 5 Package(s) of CAR STACKER<br>N/A:PARK PLUS,INC<br>N/A CODE:16-265TPC-823<br>THIS SHIPMENT CONTAINS NO WOOD PACKING MATERIALS<br>SCAC CODE:SMMB<br>CY/CY<br>FREIGHT COLLECT | 9,000.000 kgs. | 52.000 cu. m. |
| XINU8199461<br>40' HIGH CUBE<br>Seal Number:<br>FEX9086419<br>Tare Weight: 3,800 kgs.<br>Marks and Numbers: N/M | 3 Package(s) of CAR STACKER<br>N/A:PARK PLUS,INC<br>N/A CODE:16-265TPC-823<br>THIS SHIPMENT CONTAINS NO WOOD PACKING MATERIALS<br>SCAC CODE:SMMB<br>CY/CY<br>FREIGHT COLLECT | 19,000.000 kgs. | 64.000 cu. m. |
| CAXU9010066<br>40' HIGH CUBE<br>Seal Number:<br>FEX9086385<br>Tare Weight: 3,920 kgs.<br>Marks and Numbers: N/M | 3 Package(s) of CAR STACKER<br>N/A:PARK PLUS,INC<br>N/A CODE:16-265TPC-823<br>THIS SHIPMENT CONTAINS NO WOOD PACKING MATERIALS<br>SCAC CODE:SMMB<br>CY/CY<br>FREIGHT COLLECT | 19,000.000 kgs. | 64.000 cu. m. |

CHINA MARINE SHIPPING AGENCY SHANDONG COMPANY LIMITED

| PLACE AND DATE OF ISSUE | SHIPPED ON BOARD DATE | SIGNED on behalf of the Carrier MSC Mediterranean Shipping Company S.A. by As Agent |
|---|---|---|
| Qingdao, China<br>09-May-2016 | 07-May-2016 | AS AGENT FOR THE CARRIER OF B/L TITLE SHOWED(12) |

176

Sea Waybill Standard Edition - 02/2015

A 219998201

**MEDITERRANEAN SHIPPING COMPANY S.A.**
12-14, chemin Rieu - CH -1208 GENEVA, Switzerland
website: www.msc.com SCAC Code: MSCU

**SEA WAYBILL No.** **MSCUQS946666**
**RIDER PAGE**
**Page 2 of 2**

CONTINUATION PARTICULARS FURNISHED BY THE SHIPPER - NOT CHECKED BY CARRIER - CARRIER NOT RESPONSIBLE (see Clause 14)

| Container Numbers, Seal Numbers and Marks | Description of Packages and Goods (Continued on attached Bill of Lading Rider pages(s), if applicable) | Gross Cargo Weight | Measurement |
|---|---|---|---|
| TGHU8725161<br>40' HIGH CUBE<br>Seal Number:<br>FEX8808949<br>Tare Weight: 3,870 kgs.<br>Marks and Numbers: N/M | 3 Package(s) of CAR STACKER<br>N/A:PARK PLUS,INC<br>N/A CODE:16-265TPC-823<br>THIS SHIPMENT CONTAINS NO WOOD PACKING MATERIALS<br>SCAC CODE:SMMB<br>CY/CY<br>FREIGHT COLLECT | 19,000.000 kgs. | 64.000 cu. m. |
| CRXU9711749<br>40' HIGH CUBE<br>Seal Number:<br>FEX8808950<br>Tare Weight: 3,900 kgs.<br>Marks and Numbers: N/M | 12 Package(s) of CAR STACKER<br>N/A:PARK PLUS,INC<br>N/A CODE:16-265TPC-823<br>THIS SHIPMENT CONTAINS NO WOOD PACKING MATERIALS<br>SCAC CODE:SMMB<br>CY/CY<br>FREIGHT COLLECT | 10,000.000 kgs. | 64.000 cu. m. |
| MSCU8560501<br>40' HIGH CUBE<br>Seal Number:<br>FEX8808951<br>Tare Weight: 3,840 kgs.<br>Marks and Numbers: N/M | 3 Package(s) of CAR STACKER<br>N/A:PARK PLUS,INC<br>N/A CODE:16-265TPC-823<br>THIS SHIPMENT CONTAINS NO WOOD PACKING MATERIALS<br>SCAC CODE:SMMB<br>CY/CY<br>FREIGHT COLLECT | 19,000.000 kgs. | 64.000 cu. m. |
| CARU9948941<br>40' HIGH CUBE<br>Seal Number:<br>FEX8808953<br>Tare Weight: 3,840 kgs.<br>Marks and Numbers: N/M | 3 Package(s) of CAR STACKER<br>N/A:PARK PLUS,INC<br>N/A CODE:16-265TPC-823<br>THIS SHIPMENT CONTAINS NO WOOD PACKING MATERIALS<br>SCAC CODE:SMMB<br>CY/CY<br>FREIGHT COLLECT | 19,000.000 kgs. | 64.000 cu. m. |
| CAXU9072129<br>40' HIGH CUBE<br>Seal Number:<br>FEX8808952<br>Tare Weight: 3,870 kgs.<br>Marks and Numbers: N/M | 3 Package(s) of CAR STACKER<br>N/A:PARK PLUS,INC<br>N/A CODE:16-265TPC-823<br>THIS SHIPMENT CONTAINS NO WOOD PACKING MATERIALS<br>SCAC CODE:SMMB<br>CY/CY<br>FREIGHT COLLECT | 19,000.000 kgs. | 64.000 cu. m. |
| | Total : | 160,000.000 kgs. | 656.000 cu. m. |

CHINA MARINE SHIPPING AGENCY
SHANDONG COMPANY LIMITED
AS AGENT FOR THE CARRIER OF
B/L TITLE SHOWED(12)

| PLACE AND DATE OF ISSUE | SHIPPED ON BOARD DATE | SIGNED on behalf of the Carrier MSC Mediterranean Shipping Company S.A. by As Agent |
|---|---|---|
| Qingdao, China<br>09-May-2016 | 07-May-2016 | |

176

Sea Waybill Standard Edition - 02/2015

A 219998200



# MEDITERRANEAN SHIPPING COMPANY S.A.

Terms and conditions of MSC Mediterranean Shipping Company S.A.

# CONTRACT OF CARRIAGE

Contract of Carriage continued from the front page.

**1. DEFINITIONS**

The following definitions shall apply in this Sea Waybill:

**Carrier:** means MSC Mediterranean Shipping Company S.A.

**COGSA:** means the U.S. Carriage of Goods by Sea Act, 1936

**Combined Transport:** arises if the Carrier has indicated a Place of Receipt and/or a Place of Delivery on the front hereof in the relevant spaces. Combined Transport consists of a Port-to-Port carriage and Inland Transport.

**Container:** includes any container, trailer, transportable tank, flat or pallet, or any similar article used to consolidate Goods and any connected or accessory equipment.

**Freight:** includes the freight and all charges, costs and expenses whatsoever payable to the Carrier in accordance with the applicable Tariff and this Sea Waybill, including storage, per diem and demurrage.

**Goods:** includes the whole or any part of the cargo carried under this Sea Waybill, including any packing or packaging materials and Merchant owned or leased Containers.

**Hague Rules:** means the provisions of the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25 August 1924 with the express exclusion of Article 9.

**Hague-Visby Rules:** means the provisions of The Hague Rules 1924 as Amended by the Protocol adopted at Brussels on 23 February 1968, and 21st December 1979 (SDR Protocol) where applicable. Notwithstanding anything to the contrary herein it is expressly agreed that nothing herein shall contractually apply the Hague-Visby Rules to this Sea Waybill and they shall apply only when compulsorily applicable by the law governing this Sea Waybill.

**Inland Transport:** means carriage during Combined Transport other than between the Port of Loading and the Port of Discharge.

**Merchant:** includes the Shipper, Consignee, holder of this Sea Waybill, the receiver of the Goods and any Person owning, entitled to or claiming the possession of the Goods or of this Sea Waybill or anyone acting on behalf of this Person.

**Person:** includes an individual, corporation, company or any other legal entity.

**Place of Delivery:** means the place at which the Carrier has contracted to deliver the Goods, when such place is other than the Port of Discharge.

**Place of Receipt:** means the place at which the Carrier has contracted to receive the Goods, when such place is other than the Port of Loading.

**Pomerene Act:** means the United States Federal Sea Waybill Act, 1916 49 U.S.C. 801 or any amendments thereto.

**Port-to-Port carriage:** means carriage between the Port of Loading and the Port of Discharge.

**Subcontractor:** includes but is not limited to the owners, charterers and operators of the Vessel(s), other than the Carrier, as well as stevedores, terminals and groupage operators, road and rail transport operators, warehousemen and any independent contractors employed by the Carrier performing the carriage, and any direct or indirect Subcontractors, servants and agents thereof, whether in direct contractual privity or not.

**Vessel:** includes the vessel named herein or any substituted vessel, feeder vessel, lighter or other watercraft utilized by the Carrier for carriage by sea.

**2. CONTRACTING PARTIES AND WARRANTY**

**The contract evidenced by this Sea Waybill is between the Carrier and the Shipper. The Shipper, who is the only party entitled to give the Carrier instructions in relation to this contract of carriage, undertakes to provide the Merchant and in particular the Consignee with a legible copy of all the Terms and Conditions contained in this Sea Waybill. Every Person defined as "Merchant" is jointly and severally liable towards the Carrier for all the various undertakings, responsibilities and liabilities of the Merchant under or in connection with this Sea Waybill and to pay the Freight due under it without deduction or set off. The Shipper warrants that in agreeing to the terms and conditions in this Sea Waybill, he is the owner of the Goods or he does so with the authority of the owner of the Goods, or of the Person entitled to the possession of the Goods or of this Sea Waybill, or of the Merchant.**

**3. CARRIER'S TARIFF**

[illegible]

**4. SUBCONTRACTING AND INDEMNITY**

[illegible]

**5. CARRIER'S RESPONSIBILITY**

[illegible]

**6. U.S. TRADE CLAUSE**

[illegible]

**7. COMPENSATION AND LIABILITY PROVISIONS**

[illegible]

**8. SCOPE OF VOYAGE, DELAY, CONSEQUENTIAL DAMAGES**

[illegible]

**9. METHODS AND ROUTES OF CARRIAGE**

[illegible]

**10. NOTICE OF CLAIMS, TIME BAR AND JURISDICTION**

[illegible]

**11. MERCHANT-PACKED CONTAINERS**

[illegible]

**12. REFRIGERATION, HEATING, INSULATION**

[illegible]

**13. INSPECTION OF GOODS AND SPECIAL CIRCUMSTANCES**

[illegible]

**14. DESCRIPTION OF GOODS AND MERCHANT'S RESPONSIBILITY**

[illegible] such action, including but not limited to any detention, demurrage and storage charges for the Goods and/or the Container.

14.8 The Carrier allows a period of free time for the use of the Containers and other equipment in accordance with the Tariff and as advised by the local MSC agent at the Ports of Loading and Discharge. Free time commences from the day the Container and other equipment is collected by the Merchant or is discharged from the Vessel or is delivered to the Place of Delivery as the case may be. The Merchant is required and has the responsibility to return to a place nominated by the Carrier the Container and other equipment before or at the end of the free time allowed at the Port of Discharge or the Place of Delivery. Demurrage, per diem and detention charges will be levied and payable by the Merchant thereafter in accordance with the Tariff.

14.9 The Merchant shall redeliver, to a place nominated by the Carrier, the Containers and other equipment in like good order and condition, undamaged, empty, odour free, cleaned and with all fittings installed by the Merchant removed and without any rubbish, dunnage or other debris inside. The Merchant shall be liable to indemnify the Carrier for any and all costs incurred reinstating or replacing Containers and other equipment not returned in the condition as specified above, including the reasonable legal expenses and costs of recovering the costs incurred and interest thereon.

**15. DANGEROUS OR HAZARDOUS GOODS**

15.1 The Carrier will not accept any Goods of a dangerous or hazardous nature without prior written notice of their full and true particulars and the Carrier's written approval to carry them.

When the Merchant delivers Goods of a dangerous or hazardous nature to the Carrier, the Merchant shall fully inform the Carrier in writing of the precise and accurate details of the Goods and special precautions or handling required for the Goods. Such Goods shall be distinctly marked on the outside of the Container as well as on the outside of the packaging inside the Container so as to indicate the nature thereof and the marking must comply with the requirements of any applicable regulations, including regulations contained in any relevant international treaty or convention.

15.2 The Merchant shall be fully liable for and shall indemnify, hold harmless and defend the Carrier, its servants, agents and subcontractors and any third party for all loss, damage, delay, personal injury, death or expenses including fines and penalties, and all reasonable legal expenses and costs caused to the Carrier, the Vessel, any cargo, and other property, whether on board or ashore, arising from such Goods and/or from the breach of clause 15.1, whether or not the Merchant was aware of the nature of such Goods.

15.3 Nothing contained in this clause shall deprive the Carrier of any of its rights provided for elsewhere.

**16. FREIGHT AND CHARGES**

16.1 Freight has been calculated on the basis of the Shipper's particulars and if such particulars are found to be erroneous and additional Freight is payable, the Merchant shall be liable therefor and also for any expense thereby incurred.

16.2 All Freight is earned and due upon receipt of the Goods by the Carrier, whether the Freight is prepaid or collect and the Carrier shall be entitled to all Freight due under all circumstances, ship and/or cargo lost or not lost or the voyage abandoned. All Freight shall be paid when due without any set-off, counter claim, or deduction.

16.3 Every Person defined as "Merchant" in clause 1 shall be jointly and severally liable to the Carrier for the payment of all Freight and charges and for the performance of the obligations of each of them hereunder. Any Person engaged by the Merchant to perform forwarding services with respect to the Goods shall be considered to be exclusively the Merchant's agent for all purposes, and any payment of Freight to such Person shall not be considered payment to the Carrier in any event whatsoever. Failure of such third parties to pay any part of the Freight to the Carrier shall be considered a default by the Merchant in the payment of Freight.

**17. CARRIER'S LIEN**

THE CARRIER, ITS SERVANTS OR AGENTS SHALL HAVE A LIEN ON THE GOODS AND ANY DOCUMENT RELATING THERETO FOR FREIGHT AND FOR GENERAL AVERAGE CONTRIBUTIONS TO WHOMSOEVER DUE. THE CARRIER, ITS SERVANTS OR AGENTS SHALL ALSO HAVE A LIEN AGAINST THE MERCHANT ON THE GOODS AND ANY DOCUMENT RELATING THERETO FOR ALL SUMS DUE FROM THE MERCHANT TO THE CARRIER UNDER ANY OTHER CONTRACT. The Carrier may exercise its lien at any time and any place in its sole discretion, through the action of any servant, agent or Subcontractor, whether the contractual carriage is completed or not. The Carrier's lien shall also extend to cover the cost and legal expense of recovering any sums due. The Carrier shall have the right to sell any Goods liened by public auction or private treaty without notice to the Merchant. Nothing herein shall prevent the Carrier from recovering from the Merchant the difference between the amount due to the Carrier and the net amount realised by such sale.

**18. OPTIONAL STOWAGE, DECK CARGO AND LIVESTOCK**

18.1 Goods, whether packed in Containers or not, may be carried on deck or under deck without notice to the Merchant unless it is specifically stipulated on the front hereof that the Containers or Goods will be carried under deck. If carried on deck, the Carrier shall not be required to note, mark or stamp on the Sea Waybill any statement of such on-deck carriage. Save as provided in clause 18.2 such Goods (except livestock) carried on or under deck and whether or not stated to be carried on deck shall participate in general average and shall be deemed to be within the definition of Goods for the purposes of the Hague Rules or the COGSA or any compulsorily applicable legislation and shall be carried subject to such Rules or Act, whichever is applicable.

18.2 Goods which are out of gauge and/or are stowed on or in open top containers, flatracks or platforms, and which are stated on the front hereof to be carried on deck, and all livestock whether carried on deck or under deck, are carried without any responsibility whatsoever on the part of the Carrier for loss or damage of whatsoever nature or delay arising during the carriage whether caused by unseaworthiness or negligence or any other cause whatsoever and the Hague Rules or the COGSA shall not apply.

**19. MATTERS ADVERSELY AFFECTING CARRIER'S PERFORMANCE**

19.1 If at any time the carriage is or is likely to be affected by any hindrance, risk, danger, delay, difficulty or disadvantage of whatsoever kind and howsoever arising which cannot be avoided by the Carrier by the exercise of reasonable endeavours, (even though the circumstances giving rise to such hindrance, risk, danger, delay, difficulty or disadvantage existed at the time this contract was entered into or the Goods were received for the carriage) the Carrier may at its sole discretion and without notice to the Merchant and whether or not the carriage is commenced either:

(a) carry the Goods to the contracted Port of Discharge or Place of Delivery, whichever is applicable, by an alternative route to that indicated in this Sea Waybill or that which is usual for Goods consigned to that Port of Discharge or Place of Delivery; or

(b) suspend the carriage of the Goods and store them ashore or afloat upon the terms and conditions of this Sea Waybill and endeavour to forward them as soon as possible, but the Carrier makes no representations as to the maximum period of suspension, or

(c) abandon the carriage of the Goods and place them at the Merchant's disposal at any place or port which the Carrier may deem safe and convenient, or from which the Carrier is unable by the exercise of reasonable endeavours to continue the carriage, whereupon the responsibility of the Carrier in respect of such Goods shall cease. The Carrier shall nevertheless be entitled to full Freight on the Goods received for the carriage, and the Merchant shall pay any additional costs incurred by reason of the abandonment of the Goods. If the Carrier elects to use an alternative route under clause 19.1 (a) or to suspend the carriage under clause 19.1 (b) this shall not prejudice its right subsequently to abandon the carriage.

19.2 If the Carrier elects to invoke the terms of this clause 19, then notwithstanding the provisions of clause 8, the Carrier shall be entitled to such additional Freight and costs as the Carrier may determine.

**20. NOTIFICATION AND DELIVERY**

20.1 Any mention in this Sea Waybill of parties to be notified of the arrival of the Goods is solely for information of the Carrier. Failure to give such notification shall not subject the Carrier to any liability nor relieve the Merchant of any obligation hereunder.

20.2 SHOULD THE SHIPPER REQUEST THE CARRIER TO DELIVER THE GOODS TO A PERSON OTHER THAN THE CONSIGNEE NAMED ON THE FRONT HEREOF, AGREEMENT TO SUCH CHANGE SHALL BE AT THE CARRIER'S SOLE DISCRETION AND THE CARRIER SHALL IN ANY EVENT NOT ACCEPT SUCH CHANGE UNLESS THE SHIPPER'S REQUEST IS IN WRITING AND IT IS RECEIVED BY THE CARRIER IN GOOD TIME BEFORE NOTICE OF ARRIVAL OF THE GOODS HAS BEEN SENT OUT BY THE CARRIER'S AGENT AT DESTINATION. THE SHIPPER HEREBY UNDERTAKES TO INDEMNIFY THE CARRIER AGAINST ANY ADDITIONAL COSTS, EXPENSES, DELAYS AND LOSSES CAUSED THEREBY.

20.3 The Merchant shall take delivery of the Goods within the time provided for in the Carrier's applicable Tariff or as otherwise agreed. If the Merchant fails to do so, the Carrier may without notice unpack the Goods if packed in Containers and/or store the Goods ashore, afloat, in the open or under cover at the sole risk of the Merchant. Such storage shall constitute due delivery hereunder, and thereupon all liability whatsoever of the Carrier in respect of the Goods, including for misdelivery or nondelivery, shall cease and the costs of such storage shall forthwith upon demand be paid by the Merchant to the Carrier.

20.4 If the Goods are unclaimed within a reasonable time or whenever in the Carrier's opinion the Goods are likely to deteriorate, decay or become worthless, or incur charges whether for storage or otherwise in excess of their value, the Carrier may at its discretion and without prejudice to any other rights which it may have against the Merchant, without notice and without any responsibility attaching to it, sell, abandon or otherwise dispose of the Goods at the sole risk and expense of the Merchant and apply any proceeds of sale in reduction of the sums due to the Carrier from the Merchant under or in connection with this Sea Waybill.

20.5 Refusal by the Merchant to take delivery of the Goods in accordance with the terms of this clause and/or to mitigate any loss or damage thereto shall constitute an absolute waiver and abandonment by the Merchant to the Carrier of any claim whatsoever relating to the Goods or the carriage thereof. The Carrier shall be entitled to an indemnity from the Merchant for all costs whatsoever incurred, including legal costs, for the cleaning and disposal of Goods refused and/or abandoned by the Merchant.

**21. BOTH TO BLAME COLLISION CLAUSE**

If the Vessel comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the Goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said Goods, paid or payable by the other or non-carrying ship or her owners to the owners of said Goods and set-off, recouped or recovered by the other or non carrying ship or her owners as part of their claim against the Vessel or Carrier. The foregoing provisions shall also apply where the owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect of a collision or contact.

**22. GENERAL AVERAGE AND SALVAGE**

General Average shall be adjusted, stated and settled at any port or place at the Carrier's option according to York - Antwerp Rules 1994 except Rule XXII and, as to matters not therein provided for, according to the laws and usages at any port or place at the Carrier's option, save that General Average on a Vessel not bareboat chartered by the Carrier shall be adjusted according to the requirements of the owner or operator of that Vessel. Average agreement or bond and such cash deposit (payable at Carrier's option in United States currency) as the Carrier may require as additional security for the contribution of the Goods and salvage and special charges thereon, shall be furnished before delivery or forwarding.

In the event of accident, danger, damage or disaster, before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible by statute, contract, or otherwise, the Goods and the Merchant shall, jointly and severally, contribute with the Carrier in General Average to the payment of any sacrifices, losses, or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the Goods, as determined by an independent General Average adjuster duly appointed by the Carrier, and his determination as to liability for General Average contribution and his computation for the same shall be final and binding on all parties to the venture. If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully and in the same manner as if such salvaging ship or ships belonged to strangers. Such deposit as the Carrier or its agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the Goods, Shippers, Consignees or owners of the Goods to the Carrier before delivery.

**23. SEPARABILITY AND VARIATION OF TERMS, FINAL CONTRACT**

The terms of this Sea Waybill shall be separable and, if any term or provision hereof or any part of any term or provision shall be invalid to any extent, it shall be invalid to that extent, but no further and such circumstance shall not affect the validity or enforceability of any other term or provision hereof. This Sea Waybill is the final contract between the parties which supersedes any prior agreement or understanding, whether in writing or verbal, save where this Sea Waybill has been issued pursuant to another contract between the Merchant and the Carrier, when such other contract and this Sea Waybill shall be construed together. This Sea Waybill and its terms and conditions may not be changed orally.

**Sea Waybill Standard Edition - 01/2013**